No. 86,624
No. 86,625

STATE OF KANSAS, *Appellee,* v. MICHAEL LEON GORDON and JAMES R. SCRIBNER, *Appellants.*

66 P.3d 903

Review of the judgment of the Court of Appeals in 30 Kan. App. 2d 852, 50 P.3d 100 (2002). Opinion filed April 18, 2003.

*Nathan B. Webb*, assistant appellate defender, argued the cause, and *Kristen Chowning*, assistant appellate defender, and *Randall L. Hodgkinson*, deputy appellate defender, were with him on the brief for appellants.

*Richard G. Guinn*, assistant district attorney, argued the cause, and Steven J. Obermeier, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: These consolidated cases come before us on petition for review. The Court of Appeals, interpreting provisions of K.S.A. 2002 Supp. 21-4611 and K.S.A. 2002 Supp. 22-3716, concluded that the district court lacked jurisdiction to extend the defendants' probations and further concluded that the extension of Scribner's probation without a hearing was contrary to law. *State v. Gordon*, 30 Kan. App. 2d 852, 50 P.3d 100 (2002). We conclude that the district court retained jurisdiction under K.S.A. 2002 Supp. 21-4611 and K.S.A. 2002 Supp. 22-3716 to extend without hearings the defendants' probations. Therefore we reverse the Court of Appeals and affirm the district court.

*State v. Michael Leon Gordon*, No. 86,624

On July 21, 1995, Michael Gordon pled guilty to one count of attempted felony theft, a level 10 nonperson felony. On October 20, 1995, Gordon was sentenced to 24 months of probation with an underlying sentence of 10 months. Gordon was also ordered to

pay restitution in the amount of $13,286.69 at a rate of $100 monthly beginning November 1, 1995. Thus, Gordon's probation was scheduled to end October 20, 1997.

On February 5, 1996, the State moved to revoke probation with an amended motion filed March 21, 1996. The district court conducted a hearing on March 29, 1996, and revoked Gordon's probation. Gordon immediately moved to reinstate the probation. The court took the matter under advisement and set another hearing to reexamine the issue on May 2, 1996, when Gordon's probation was extended for 24 months. Thus, Gordon's probation was scheduled to end May 2, 1998.

On May 28, 1998, 26 days after Gordon's probation was to end, the State moved to revoke his probation. A hearing was conducted on July 10, 1998, and the district court revoked and then reinstated probation for 4 more months. At the hearing, Gordon's attorney said that "technically" the probation would have expired May 2, 1998, but did not argue that the court was without the power to extend probation. The court, ruling from the bench, ordered Gordon's probation be "reinstated for four more months." However, the written order of reinstatement of probation/parole filed July 17, 1998, indicated that Gordon's probation was extended for 24 months. Thus, Gordon's probation was set to end July 17, 2000.

Before his probation ended and without the hearing on July 10, 2000, the court ordered the extension of Gordon's probation until the restitution and other fees were paid. Gordon appealed the denial of his motion for his discharge from probation.

*State v. James R. Scribner*, No. 86,625

On November 17, 1994, James Scribner pled guilty to an amended complaint of attempted theft, a level 10 nonperson felony. On February 2, 1995, the district court sentenced Scribner to 36 months of probation with an underlying prison sentence of 6 months. The court ordered Scribner to pay restitution of $8,801.10 at a rate of $100 monthly beginning March 3, 1995.

On May 17, 1996, the court extended Scribner's probation for another 36 months. On October 24, 1997, the court extended

Scribner's probation again for another 36 months. Thus, Scribner's probation was scheduled to end October 24, 2000.

On August 28, 2000, the court extended Scribner's probation until October 24, 2002, or until the balance of his restitution was paid.

Scribner moved the court to discharge his probation. The court denied Scribner's motion to discharge from probation, and Scribner appealed.

The Court of Appeals in a published opinion consolidated and dismissed the two cases, concluding in both cases that the final orders extending the probations were void ab initio because they were entered after both probations had expired. The Court of Appeals also concluded that assuming jurisdiction to extend in Scribner's case, the probation was extended in violation of the hearing requirement of K.S.A. 2002 Supp. 21-4611(c)(8). We granted the State's petition for review of the Court of Appeals' decision.

This case involves two issues of first impression in this state: (1) an interpretation of the provisions of K.S.A. 2002 Supp. 22-3716(d), which grants the district court a 30-day window in which to act upon a defendant's probation, and (2) an interpretation of K.S.A. 2002 Supp. 21-4611(c)(7), which permits extension of probation until restitution is paid.

## Discussion and Analysis

### State v. Gordon

The State argues that there existed a 30-day window under the provisions of K.S.A. 2002 Supp. 22-3716(d) after Gordon's probation was to end May 2, 1998, "to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a violation of the conditions of probation." K.S.A. 2002 Supp. 22-3716(d). Revocation proceedings against Gordon were initiated May 28, 1998, within the 30-day window based upon violations that occurred before his probationary period ended. Gordon's hearing on the motion for revocation was set for July 10, 1998. Upon hearing, the district court revoked Gordon's probation and reinstated his probation, extending it for 2 additional years to end July 17, 2000. Thus, according to the State's argument, the July 10, 2000,

extension of Gordon's probation until restitution and other fees were paid was entered by the district court within Gordon's probationary term.

The Court of Appeals concluded that for the district court to retain jurisdiction over Gordon's probation, the revocation proceedings had to be initiated within the probation period. Since revocation proceedings were initiated May 28, 1998, and Gordon's probation ended May 2, 1998, the subsequent order revoking and extending his probation was void ab initio. *Gordon*, 30 Kan. App. 2d at 855. The Court of Appeals addressed the extended 30-day provisions of K.S.A. 22-3716(d), but concluded based upon our recent decision in *State v. Ferguson*, 271 Kan. 613, 617, 23 P.3d 891 (2001), that

"[t]he pleading seeking the revocation of a defendant's probation must be filed during the term of the probation. The court then has 30 days after the termination of the probationary period to cause the defendant to appear for a hearing. The State, however, may not wait to file for the revocation following the end of the term of probation." 30 Kan. App. 2d at 856.

If the State's interpretation of K.S.A. 2002 Supp. 22-3716(d) is correct, the district court retained jurisdiction over Gordon and its order extending probation until restitution was paid, is valid. If the Court of Appeals' interpretation of K.S.A. 2002 Supp. 22-3716(d) is correct, its conclusion that the district court had no jurisdiction over Gordon must be affirmed.

The interpretation of a statute is a question of law, and the appellate court's review is unlimited. *Babe Houser Motor Co. v. Tetreault*, 270 Kan. 502, 506, 14 P.3d 1149 (2000). When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in it. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001).

K.S.A. 2002 Supp. 22-3716 provides in part as follows:

"(a) At any time during probation, assignment to a community correctional services program, suspension of sentence or pursuant to subsection (d) for defendants who committed a crime prior to July 1, 1993, and at any time during which

a defendant is serving a nonprison sanction for a crime committed on or after July 1, 1993, or pursuant to subsection (d), the court may issue a warrant for the arrest of a defendant for violation of any of the conditions of release or assignment, a notice to appear to answer to a charge of violation or a violation of the defendant's nonprison sanction. The notice shall be personally served upon the defendant. The warrant shall authorize all officers named in the warrant to return the defendant to the custody of the court or to any certified detention facility designated by the court. Any court services officer or community correctional services officer may arrest the defendant without a warrant or may deputize any other officer with power of arrest to do so by giving the officer a written statement setting forth that the defendant has, in the judgment of the court services officer or community correctional services officer, violated the conditions of the defendant's release or a nonprison sanction. The written statement delivered with the defendant by the arresting officer to the official in charge of a county jail or other place of detention shall be sufficient warrant for the detention of the defendant. After making an arrest, the court services officer or community correctional services officer shall present to the detaining authorities a similar statement of the circumstances of violation. Provisions regarding release on bail of persons charged with a crime shall be applicable to defendants arrested under these provisions.

. . . .

"(d) The court shall have 30 days following the date probation, assignment to a community correctional service program, suspension of sentence or a nonprison sanction was to end to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a violation of the conditions of probation, assignment to a community correctional service program, suspension of sentence or a nonprison sanction."

The 1990 Legislature added the 30-day window now contained in K.S.A. 2002 Supp. 22-3716(d). L. 1990, ch. 112, sec. 1. The proposed change resulted from an unpublished decision by the Court of Appeals in *State v. Arnold,* No. 63,866 filed November 9, 1989. Prior to the amendment, the Court of Appeals in *Arnold* found that the plain language of K.S.A. 22-3716(1) (Ensley 1988) precluded a finding that the district court had jurisdiction over the case once the term of probation had ended:

"The authority for revocation of probation is found in K.S.A. 22-3716 where it is provided that revocation proceedings may be initiated '[a]t any time during probation.' K.S.A. 22-3716(1). 'During probation' plainly speaks of that time which is within and prior to the expiration of the term of probation. Here, probation expired on October 6, 1988. The order to show cause did not issue until three weeks after the expiration of probation. Because this was not 'during probation,' by operation of K.S.A. 22-3716(1) the court did not have continuing jurisdiction

over Arnold. Thus, the trial court did not have authority to revoke Arnold's probation."

Judge Buchele was the district judge involved in *Arnold*, and Margaret Lutes was one of the attorneys for the State in *Arnold*. Both Judge Buchele and Lutes testified at the March 5, 1990, House Judiciary Committee meeting. The minutes from that meeting contain the following references to the bill:

"HEARING ON HB 2752 Court allowed 30 days to issue warrant for arrest of defendant who did not meet conditions of probation.

"Judge James Buchele informed the Committee HB 2752 would amend the statute to allow the court and/or court services a period of time following probation in which to file a motion to terminate. The bill as drafted set 30 days for the period of time. He recommended a 60 day period of time.

"Margaret Lutes, Assistant Shawnee District Attorney, testified in support of HB 2752.

"There being no other conferees, the hearing on HB 2752 was closed."

The plain language of K.S.A. 2002 Supp. 22-3716(d) grants the court 30 days following the date probation ended to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a violation of the conditions of probation. The *Arnold* decision and the testimony of Judge Buchele concerning the 30-day period strongly suggest that the legislature was concerned that defendants serving their last days of probation would have less of an incentive to strictly follow their probation rules knowing that any violations would require the preparation and filing of documents with the court before the termination of the probation period. When this concern is considered with the plain language of K.S.A. 2002 Supp. 22-3716(d), it becomes clear that the legislature intended by its language to grant the court an additional 30 days after probation ended to initiate probation revocations proceedings based upon violations of conditions occurring within the probationary period.

The Court of Appeals in this case relied upon our recent decision in *State v. Ferguson*, 271 Kan. 613, in concluding that the 30-day window in K.S.A. 2002 Supp. 22-3716(d) required proceedings for revocation to be filed within the probationary period and granted

"30 days after the termination of the probationary period to cause the defendant to appear for a hearing." *Gordon*, 30 Kan. App. 2d at 856. We note that *Ferguson* did not involve an interpretation of K.S.A. 2002 Supp. 22-3716. *Ferguson* does not mention K.S.A. 2002 Supp. 22-3716. Instead, *Ferguson* was concerned with the interpretation of K.S.A. 2002 Supp. 21-4611(c)(3) and (d). The defendant in *Ferguson* claimed that the retroactivity provision of K.S.A. 2002 Supp. 21-4611(d) automatically reduced her 24 months' probation to 12 months. Thus, when the court extended her probation, it did so after her 12 months' probation had expired and therefore beyond its jurisdiction. *Ferguson* held that the defendant's probation was not automatically reduced to 12 months under the statute but would be modified only after a court hearing. 271 Kan. at 617. The extension of her probation occurred during her 24 months' probationary term and was clearly within the jurisdiction of the district court.

"It was within the above context that we said: "[A] trial court has jurisdiction to revoke probation as long as the proceedings are started before expiration of the probation term." 271 Kan. at 617 (citing *State v. Williams*, 20 Kan. App. 2d 142, Syl. ¶ 1, 20 P.3d 99 [2001]). In *Williams*, the motion for revocation of the defendant's probation and order to show cause were filed after 5 p.m. on the day the defendant's probation was scheduled to end. The court rejected the argument that the motion and order filed after 5 p.m. were untimely. 20 Kan. App. 2d at 148. Thus, in both *Ferguson* and *Williams*, the motions for revocation were filed within the probationary term and there was no need to address the provisions of K.S.A. 2002 Supp. 22-3716(d).

Since neither *Ferguson* nor *Williams* involved an interpretation of K.S.A. 2002 Supp. 22-3716(d), our statement in *Ferguson* that "it is well established in Kansas that a trial court has jurisdiction to revoke probation as long as the proceedings are started before expiration of the probation term," 271 Kan. at 617, is dicta only. Prior to the enactment of K.S.A. 2002 Supp. 22-3716(d), in Kansas, probation revocation proceedings had to be initiated within the probation period. However, as discussed above, the plain language of K.S.A. 2002 Supp. 22-3716(d) changes Kansas law and grants the

"court . . . 30 days following the date probation . . . was to end to issue a warrant for the arrest or notice to appear for the defendant to answer a charge of a violation of the conditions of probation . . . ." In this case, the motion for revocation was filed within that 30-day window. The subsequent revocation and extension of probation for Gordon was within the jurisdiction of the district court. Thus, the final extension of his probation until such time as the restitution was paid in full was within the jurisdiction of the district court.

### State v. Scribner

Without analysis, the Court of Appeals agreed that the provisions of K.S.A. 2002 Supp. 21-4611(c)(8) required a "hearing prior to the extension of probation for failure to complete restitution payments within the original probation term." 30 Kan. App. 2d at 858. The Court noted that "[s]ubsection (c)(8) specifically requires a 'modification hearing and a judicial finding of necessity' for extensions of the probation." The Court of Appeals engaged in no analysis of the controlling statute, K.S.A. 2002 Supp. 21-4611, for the Court of Appeals decided that the district court had no jurisdiction to extend Scribner's probation with or without a hearing.

The Court of Appeals noted that Scribner was first placed on probation February 2, 1995, with his term ending February 2, 2000. The Court further noted that the extension of "his probation for the payment of restitution was entered August 28, 2000—6 months and 26 days too late and without a hearing." 30 Kan. App. 2d at 858. The record however undermines such a conclusion. Scribner's 36 months' probation began February 2, 1995. On May 17, 1996, his probation was revoked and extended for 36 months. Again, on October 24, 1997, his probation was revoked and extended for another 36 months to end October 24, 2000. The order appealed from extending his probation until restitution was paid in full was entered August 28, 2000, approximately 2 months before his probationary period was to end October 24, 2000. Thus, the Court of Appeals' conclusion that the order extending his probation was untimely is in error.

Having concluded that the district court retained jurisdiction over both Gordon and Scribner, and that the orders entered by the district court in both cases were entered within valid extensions of their respective probationary periods, the question remains as to whether in the absence of hearings the final extensions of their probations until restitution was paid in full were within the law. More specifically, the question raised by reason of the Court of Appeals' decision is whether the district court's final probationary extensions of Gordon and Scribner are contrary to the hearing provisions of K.S.A. 2002 Supp. 21-4611(c)(8).

Hearing

There are two important aspects to this issue. The first has to do with the provisions of K.S.A. 2002 Supp. 21-4611 and the Court of Appeals' determination that a hearing was required prior to the final extension of Scribner's probation. The second aspect has to do with the defendants' contentions that the extension of their probations without a hearing denied them due process of law.

(1) K.S.A. 2002 Supp. 21-4611

The interpretation of a statute is a question of law, and our standard of review is unlimited. As stated above in our discussion of K.S.A. 2002 Supp. 22-3716, the fundamental rule of statutory construction to which all other rules are subordinate is that legislative intent governs. We are bound to implement the expressed intent of the legislature where the statute is plain and unambiguous. *State ex rel. Stovall v. Meneley*, 271 Kan. 355, 378, 22 P.3d 124 (2001). As an aid to understanding the expressed intent of a statute, all provisions of the statute are to be considered *in pari materia* rather than isolated parts, with the objective to reconcile, if possible, the different provisions so as to make them consistent and harmonious. *State v. Hymer*, 271 Kan. 716, 723, 26 P.3d 63 (2001).

K.S.A. 2002 Supp. 21-4611(c) provides:

"(c) For all crimes committed on or after July 1, 1993, the duration of probation in felony cases sentenced for the following severity levels on the sentencing guidelines grid for nondrug crimes and the sentencing guidelines grid for drug crimes is as follows:

. . . ."

(6) Except as provided in subsections (c)(7) and (c)(8), the total period in all cases shall not exceed 60 months, or the maximum period of the prison sentence that could be imposed whichever is longer. Nonprison sentences may be terminated by the court at any time.

(7) If the defendant is convicted of nonsupport of a child, the period may be continued as long as the responsibility for support continues. If the defendant is ordered to pay full or partial restitution, the period may be continued as long as the amount of restitution ordered has not been paid.

(8) The court may modify or extend the offender's period of supervision, pursuant to a modification hearing and a judicial finding of necessity. Such extensions may be made for a maximum period of five years or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the original supervision term.

"(d) The provisions of subsection (c), as amended by this act, shall be applied retroactively. The sentencing court shall direct that a review of all persons serving a nonprison sanction for a crime in severity levels 8, 9 or 10 of the sentencing guidelines grid for nondrug crimes or a crime in severity levels 3 or 4 of the sentencing guidelines grid for drug crimes be conducted. On or before September 1, 2000, the duration of such person's probation shall be modified in conformity with the provisions of subsection (c)."

The 2000 Legislature added subsection (d). L. 2000, ch. 182, sec. 6.

Gordon and Scribner acknowledge that subsection (7) authorizes a court to continue probation for as long as the ordered restitution has not been paid. However, they contend that subsection (c)(7) must be read with subsection (c)(8), which provides that the court may modify or extend the offender's period of supervision, pursuant to a modification hearing and a judicial finding of necessity. The Court of Appeals adopted this argument and concluded: "We agree. Subsection (c)(8) specifically requires a 'modification hearing and a judicial finding of necessity' for extensions of the probation." 30 Kan. App. 2d at 858.

The express provisions of K.S.A. 2002 Supp. 21-4611(c)(7) and K.S.A. 2002 Supp. 21-4611(c)(8) fail to provide support for the Court of Appeals' conclusion. Subsection (c)(8) provides in its second sentence, after requiring a modification hearing, that "[s]uch extensions may be made for a maximum period of five years or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the original supervision term." However, subsection (c)(7) authorizes extensions of probation for

as long as the responsibility for support continues or for as long as the amount of restitution ordered has not been paid. The period of time provided for in (c)(7) in some cases may exceed the period of time provided for in (c)(8). At the very least, a reading of both subsections together suggests that they are alternative provisions for extensions of probations.

Prior to the 1993 amendments to K.S.A. 21-4611, the substance of what now makes up K.S.A. 2002 Supp. 21-4611(c)(6) through (c)(8) was contained in one subsection:

"(3) The total period in all cases shall not exceed 60 months, or the maximum period of the prison sentence that could be imposed whichever is longer. *If the defendant is convicted of nonsupport of a child the period may be continued as long as the responsibility for support continues. If the defendant is ordered to pay full or partial restitution, the period may be continued as long as the amount of restitution ordered has not been paid. The court may modify or extend the offender period of supervision, pursuant to a modification hearing and a judicial finding of necessity.* Such extensions may be made for a maximum period of five years or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the original supervision term. Nonprison sentences may be terminated by the court at any time." L. 1992, ch. 239, sec. 245. (Emphasis added.)

After the 1993 amendments, the above language was broken into three subsections. L. 1993, ch. 291, sec. 185. Notably, the subsection containing the first sentence, which was then subsection (c)(3), was modified to accommodate the exceptional cases of nonsupport of a child and restitution, which was then subsection (c)(4), and to accommodate the exceptional case of an extension "pursuant to a modification hearing and a judicial finding of necessity," which was then subsection (c)(5):

"(3) Except as provided in subsections (c)(4) and (c)(5), the total period in all cases shall not exceed 60 months, or the maximum period of the prison sentence that could be imposed whichever is longer. ~~If the defendant is convicted of nonsupport of a child the period may be continued as long as the responsibility for support continues. If the defendant is ordered to pay full or partial restitution, the period may be continued as long as the amount of restitution ordered has not been paid. The court may modify or extend the offender period of supervision, pursuant to a modification hearing and a judicial finding of necessity. Such extensions may be made for a maximum period of five year or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the~~

~~original supervision term.~~ Nonprison sentences may be terminated by the court at any time.

"(4) If the defendant is convicted of nonsupport of a child, the period may be continued as long as the responsibility for support continues. If the defendant is ordered to pay full or partial restitution, the period may be continued as long as the amount of restitution ordered has not been paid.

"(5) The court may modify or extend the offender's period of supervision, pursuant to a modification hearing and a judicial finding of necessity. Such extensions may be made for a maximum period of five years or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the original supervision term." L. 1993, ch. 291, sec. 185.

Thus, the 1993 amendments created two separate and distinct provisions for the extension of probation: one based upon the nonsupport of a child and the payment of restitution, and the other based upon a modification hearing and a judicial finding of necessity.

"When the legislature revises an existing law, it is presumed that the legislature intended to change the law as it existed prior to the amendment. [Citation omitted.]" *Kaul v. Kansas Dept. of Revenue*, 266 Kan. 464, 471, 970 P.2d 60 (1998), *cert. denied* 528 U.S. 812 (1999). The legislature by its 1993 amendment, isolated as distinct and separate two cases involving defendants convicted of nonsupport of a child and defendants who have been ordered to pay restitution. Prior to the 1993 amendment, an argument could be made that in all cases a hearing was required before extending probation. After the amendment, a hearing requirement for extension was not included for cases involving child support and restitution. K.S.A. 2002 Supp. 21-4611(c)(7). At the same time, the legislature provided for a hearing in all other cases where there was a move to extend probation in subsection (c)(6). K.S.A. 2002 Supp. 21-4611(c)(8).

Reading the provisions of the statute together, we conclude that in all cases for crimes committed on or after July 1, 1993, the duration of probation in felony cases is set in K.S.A. 2002 Supp. 21-4611(c) (1) through (4). However, for crimes falling within subsections (3) and (4), the court may, if it finds and sets forth with particularity the reasons for finding that the safety of the members of the public will be jeopardized or that the welfare of the inmate

will not be served, impose a longer period of probation, which according to subsection (5) shall not be considered a departure and subject to appeal. With the exception of subsections (c)(7) and (c)(8), the total period in all cases shall not exceed 60 months or the maximum period of the prison sentence that could be imposed whichever is longer. With the exception of subsection (c)(7), any extension for all cases beyond the initial maximum provided for in subsection (c)(6) must be accomplished under subsection (c)(8) pursuant to a modification hearing and a judicial finding of necessity. No limit is provided for in subsection (c)(7), and no express provision for a hearing is included.

The above reading of the provisions of K.S.A. 2002 Supp. 21-4611 provides a reasonable basis for concluding that the legislature intentionally excluded a hearing requirement in only two cases: (1) where the defendant is convicted of nonsupport of a child and the responsibility for support continues, and (2) where the defendant is ordered to pay full or partial restitution and the amount of restitution ordered has not been paid. K.S.A. 2002 Supp. 21-4611(c)(7). In such cases, the court may extend probation for as long as the responsibility for support continues and for as long as the amount of restitution ordered has not been paid. In both cases, the issues to be decided are not of sufficient magnitude as to require an adversarial procedure for resolution. The district judge adopted such a rationale in concluding that "I am not sure there were any justifiable issues presented that would require an in court determination bringing the parties in."

This reading of the statute is supported in our recent decision of *State v. McDonald,* 272 Kan. 222, 32 P.3d 1167 (2001). The defendant in *McDonald* argued among other contentions that extending his probation for nonpayment of restitution ordered under the then provisions of K.S.A. 2002 Supp. 21-4611(c)(4), without being afforded an attorney, violated his due process rights under the United States Constitution. The court noted that the subsection involving the nonpayment of restitution does not mention the right to counsel which was in contrast to the provisions for the revocation of probation, K.S.A. 2002 Supp. 22-3716(b). Therefore, by negative inference, "[i]t is thus apparent there is no statutory right to coun-

sel in Kansas at proceedings to extend the term of probation." 272 Kan. at 227.

The same may be said in the case of a hearing. K.S.A. 2002 Supp. 21-4611(c)(7) does not provide for a hearing in contrast to the requirements for probation revocation in K.S.A. 2002 Supp. 22-3716(b). Thus, as in *McDonald* by negative inference, it is apparent that there is no statutory right to a hearing in Kansas for the two cases provided for in K.S.A. 21-4611(c)(7) for an extension of the term of probation. Moreover, the legislature provided for a hearing and a finding of judicial necessity in all other cases where an extension is sought beyond the maximum time provided for in K.S.A. 2002 Supp. 21-4611(c)(6), but specifically excepted the two cases of nonsupport and restitution in K.S.A. 2002 Supp. 21-4611(c)(7). Thus, it may be concluded that had the legislature wanted a hearing it would have specifically provided for one in K.S.A. 2002 Supp. 21-4611(c)(7).

We conclude that as extension of probation under the provisions of K.S.A. 2002 Supp. 21-4611(c)(7) does not require a hearing in the two cases within that subsection, the court may extend a defendant's probation without hearing under the conditions set forth in K.S.A. 2002 Supp. 21-4611(c)(7).

Constitutional Arguments

The Court of Appeals found the actions of the district court violated the provisions of K.S.A. 2002 Supp. 21-4611(c)(8) and did not address the defendants' contention that extensions without hearing violated due process under the United States Constitution. The State did address constitutional issues in its petition for review. Thus, it may be concluded that the defendants' claim of a due process violation is raised for the first time on appeal.

"Where constitutional grounds are raised for the first time on appeal, they are not properly before this court for review. [Citation omitted.] We may consider such issues in exceptional circumstances where the asserted error involves a strictly legal question that will be determinative of the case or where consideration of the new issue is necessary to serve the interests of justice or to prevent a denial of fundamental rights. [Citation omitted.]" *State v. Mason*, 268 Kan. 37, 39, 986 P.2d 387 (1999).

The claimed constitutional deprivation based upon our interpretation of the provisions of K.S.A. 2002 Supp. 21-4611(c)(7), becomes a question of whether in not requiring a hearing for extension of probation the provisions of K.S.A. 2002 Supp. 21-4611(c)(7) are unconstitutional. Such a determination is strictly a legal question and one of first impression in this state. It is a question that is likely to arise frequently. In these circumstances, we believe it will serve the interest of justice to address the issue. We are mindful that although an issue is not raised by the parties before the trial court, we may address the issue. When it is necessary in order to determine the merits of the action or where the issues cannot be intelligently decided without doing so, the constitutionality of a statute should be decided, even if the parties failed to raise the constitutional question, failed to plead the question, or failed to present the question to the trial court. *U.S.D. No. 443 v. Kansas State Board of Education,* 266 Kan. 75, 91, 966 P.2d 68 (1998).

Our standard of review is a familiar one:

"The constitutionality of a statute is presumed, all doubts must be resolved in favor of its validity, and before the statute may be stricken down, it must clearly appear the statute violates the constitution. In determining constitutionality, it is the court's duty to uphold a statute under attack rather than defeat it, and if there is any reasonable way to construe the statute as constitutionally valid, that should be done. Statutes are not stricken down unless the infringement of the superior law is clear beyond a reasonable doubt. [Citation omitted.]" *State v. Engles,* 270 Kan. 530, 531, 17 P.3d 355 (2001).

This court recently addressed a similar issue concerning the same provisions of the statute in *State v. McDonald* within the context that a failure to provide representation of counsel before extending probation for payment of restitution denied the defendant due process of law. We concluded in *McDonald* that there were no constitutional requirements of representation by counsel, citing the "considerably lower sense of urgency where the probation is extended in an effort to afford the probationer a greater amount of time in which to pay restitution." 272 Kan. at 227.

*McDonald* provides a thorough analysis of the constitutional issue regarding representation of counsel. Relying on federal cases decided prior to the federal Sentencing Reform Act of 1984,

*McDonald* noted that federal case law unanimously agreed that counsel was required in probation revocation hearings. However, the opposite conclusion was supported in cases involving probation extension or modification. 272 Kan. at 227-28. The rationale for not providing counsel is perhaps best expressed in *Skipworth v. United States*, 508 F.2d 598 (3d Cir. 1975), wherein it was recognized that an extension of probation does result in deprivation of a limited liberty interest but not the "grievous loss" of liberty anticipated by the Supreme Court during probation revocation proceedings. *McDonald* notes that several state courts have followed the logic of *Skipworth* and its progeny in refusing to recognize a due process right to a hearing for probation extension or modifications. *McDonald* noted that some courts require a hearing and counsel, but that conclusion is "largely based on statute." The Court summed up its analysis by concluding that "Kansas procedures clearly pass constitutional muster." 272 Kan. at 229.

Resolution of the present case is largely influenced by our decision in *McDonald.* While the issue in *McDonald* involved the right to counsel, the cases cited in *McDonald* and the language used strongly support the conclusion that there is no constitutional right to a hearing under the provisions of K.S.A. 21-4611(c)(7). *McDonald* relies in part on *United States v. Silver*, 83 F.3d 289 (9th Cir. 1996), which supports the result we reach in this case. In *Silver*, the defendant was sentenced to 3 years' probation, conditioned upon service of a 6-month sentence in a community correctional facility. A 2-year extension was entered in the defendant's case without a hearing. In concluding that such an extension may be effected without hearing, *Silver* noted:

"Whether procedural protections are necessary 'depends on the extent to which an individual would be condemned to suffer grievous loss.' [Citation omitted]. In *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), the Supreme Court held that due process requires that an individual on probation be given notice and the right to hearing prior to his parole being revoked. *Id.* at 782, 92 S. Ct. at 1759-60." 83 F.3d at 291.

In its conclusion that due process did not require a hearing for those cases coming before the federal Sentencing Act, the court set forth the rationale for such a conclusion:

"These courts believed that the extension of probation is not as 'grievous' a 'loss' as revocation and did not implicate a liberty interest sufficient to require additional procedural protections. [Citations omitted.] These courts reasoned that the loss of liberty in an extension proceeding is only a potential one and that the judge in an extension proceeding need not make a detailed factual inquiry into whether the probationer committed a violation, but only must determine what is in the best interest of society. [Citations omitted.]" 83 F.3d at 292.

The above reasoning applies with equal if not more force in this case. K.S.A. 2002 Supp. 21-4611(c)(7) deals with only two cases where there need not be a detailed factual inquiry into whether the probationer committed a violation. The only determination to be made is whether the probationer has completed his child support obligation or whether a probationer has paid all court-ordered restitution. The court is called upon to determine what is in the best interests of society. The probationer suffers no "grievous loss," and the determination does not implicate a liberty interest sufficient to require additional procedural protections. Consistent with our decision in *McDonald*, we conclude that the failure of the legislature to provide for a hearing prior to extensions of probation under K.S.A. 2002 Supp. 21-4611(c)(7) does not violate the probationer's due process rights nor does it render the provisions of the statute unconstitutional.

For their final issue, Gordon and Scribner argued before the Court of Appeals that the district court violated their equal protection rights because the court failed to make any findings on Mr. Gordon's or Mr. Scribner's efforts to acquire resources to pay restitution, or that they had no money to pay the restitution, even after a bona fide effort to do so, and there were no alternatives to extension of probation. Again, this argument is raised for the first time on appeal but for reasons set forth above we elect to address the issue.

Gordon and Scribner cite in their brief before the Court of Appeals, *City of Wichita v. Lucero*, 255 Kan. 437, 874 P.2d 1144 (1994), as authority for the proposition that before incarcerating someone for the failure to pay fines, costs, and restitution, "it must be shown not only that the defendant is indigent but that the defendant has willfully refused to make such payment or has failed

to make sufficient bona fide efforts to legally acquire the resources to pay." 255 Kan. at 449-50. Also, "the court must consider alternative measures . . . to meet the State's interest in punishment and deterrence, such as community service." 255 Kan. at 449.

Gordon and Scribner argue that while the language of *Lucero* applies to incarceration, the same principles apply in the case of extending probation for the failure to pay restitution. We disagree. *Lucero* applies when incarceration is involved. It is noted that prior to revocation of probation, a defendant is entitled to notice, a hearing, and representation of counsel. It is at such a hearing that concerns expressed by the defendants may be fully addressed.

A defendant cannot be incarcerated merely because he or she does not have the money to pay a fine or restitution. See *State v. Higgins*, 240 Kan. 756, 759, 732 P.2d 760 (1987). However, because punishment in the form of an extension of probation represents "a considerably lower sense of urgency where the probation is extended in an effort to afford the probationer a greater amount of time in which to pay restitution," *McDonald*, 272 Kan. at 227, the equal protection concern is not as strong as in the case where incarceration is the punishment. See *State v. Duke*, 10 Kan. App. 2d 392, 395, 699 P.2d 576 (1985) (holding that extension of time to pay is appropriate remedy in situation where defendant has made bona fide efforts to pay or was not at fault for failing to pay).

We conclude that Gordon and Scribner's argument that equal protection principles are violated when the probation is extended without a hearing under the provisions of K.S.A. 2002 Supp. 21-4611(c)(7) is without merit.

Judgment of the Court of Appeals dismissing the appeals is reversed. Judgment of the district court is affirmed.

ABBOTT and GERNON, JJ., not participating.

BRAZIL, S.J., and LARSON, S.J., assigned■